**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 15-cv-00517-CMA

SCOTT AARON WELCH,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commission of Social Security,

      Defendant.

_____

## ORDER AFFIRMING DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS

_____

      This matter is before the Court on review of the Commissioner's decision denying Plaintiff Scott Aaron Welch's ("Plaintiff") application for disability benefits.  Jurisdiction is proper under 42 U.S.C. § 405(g).

      Plaintiff raises two issues in his opening brief: (1) the administrative law judge ("ALJ") failed at step three of the sequential evaluation process to properly evaluate Plaintiff's mental impairments and whether these impairments meet or medically equal a listing of impairment; and (2) the ALJ's analysis is deficient because she failed to evaluate the medical evidence and medical source opinions as required by 20 C.F.R. § 404.1527.

      For the reasons set forth below, the Court affirms the decision of the Commissioner to deny Plaintiff's application for disability benefits.

## I.  <u>BACKGROUND</u>

Plaintiff, born on July 2, 1983, served in the United States military from June 5, 2002, through October 3, 2007.  (AR at 109.)[1]  While in the military, Plaintiff was a crew member on a Bradley fighting vehicle for two tours in Iraq.  (AR at 132.)  Plaintiff received an honorable discharge from the military because he was the sole care provider for his son.  (AR at 46.)  From October 2007 to December 2008, Plaintiff worked on a manufacturing line that produced semiconductors.  (AR at 138.)  From January 2008 to June 2010, Plaintiff worked as a facilities coordinator for a military contractor.  (AR at 132.)  From January 2011 to February 2011, Plaintiff worked as a "sign waiver" for a tax company.  (AR at 132.)  In August 2011, Plaintiff worked as a landscaper.  (AR at 138.)

On August 27, 2012, Plaintiff filed an application for disability benefits under Title II and Part A of Title XVIII of the Social Security Act.  (AR at 109-115.)  Plaintiff alleges a disabling condition onset date of August 31, 2011.  (AR at 109.)  In his application for disability benefits, Plaintiff alleges the following physical and mental conditions that limit his ability to work: post-traumatic stress disorder ("PTSD"), "spine strain," "knee pain syndrome," and "[ ]shoulder da[ma]ge."  (AR at 131.)  Plaintiff stated in his application that he was "too busted up to work and support his family" and that, "due to [his] mental disorders and the traumas in [his] life, [he] find[s] it almost impossible to get along with . . . few people besides [his] family."  (AR at 149.)  Plaintiff also stated that "[d]ue to the Army[,] [his] bones and joints hurt" and that "[be]cause [he is] a vet who saw war and

---

[1] The Court refers and cites to the Administrative Record in this matter, located at Doc. # 7, as "AR."

[he is] too loud, people are afraid of him," which "makes for being in the work environment and around coworkers difficult."  (AR at 149.)  Plaintiff also stated that he has "worked a lot and [he is] tired but still ha[s] a family to raise" and that he experiences stress because he "can't work and make money."  (AR at 149.)

On March 13, 2013, Plaintiff's application was denied (AR at 68-80), and on April 18, 2013, Plaintiff requested a hearing before an ALJ (AR at 84-85).  On March 25, 2014, Plaintiff, without the assistance of counsel, appeared before Administrative Law Judge Debra Boudreau.  (AR at 36-63.)  An impartial vocational expert, Nora W. Dunne, also appeared at the hearing.  (AR at 57-59.)

At the hearing, Plaintiff provided the ALJ with the following information.  Plaintiff had been on medication since 2011 and, at the time of the hearing, was taking Depakote for his bipolar disorder and Zoloft for his PTSD-related anxiety.  (AR at 53.)  However, Plaintiff "started self-medicating with medical marijuana" while his doctors were initially "trying to get all [of his] medications straightened out."  (AR at 53.)  Plaintiff was also consuming alcohol.  (AR at 53.)  In November 2012, Plaintiff was involved in a motorcycle accident because he was intoxicated.  (AR at 43.)  Plaintiff was married on January 16, 2013.  (AR at 42.)  On December 31, 2013, Plaintiff was involved in a domestic violence incident with his wife because of alcohol, but he has been "clean and sober" since January 1, 2014.  (AR at 49.)  Plaintiff stated that he hoped to get "balanced out" in the future (AR at 47), and he completed a bachelor's degree in project management at Colorado Technical University, turning in his final paper the day before his hearing.  (AR at 44.)  Instead of "lining up any type of employment," he planned on

first completing a seven-week inpatient program at the VA hospital in Denver.  (AR at 44-45.)  Plaintiff stated that he did not think he could work for a company or corporation because he "can't fire people or anything like that," but that he "really would like to take [his] skills and work with the VA and help vets."  (AR at 52.)

On May 22, 2014, the ALJ issued a written decision in which she concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (AR at 21-32.)  On June 17, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision.  (AR at 20.)  On January 28, 2015, the Appeals Council denied Plaintiff's request for review.  (AR at 1-3.)  Thus, the ALJ's decision stands as the Social Security Administration's final decision for purposes of appeal.  *See Blea v. Barnhart,* 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff filed the current action on March 12, 2015.  (Doc. # 1.)

## II.  <u>STANDARD OF REVIEW</u>

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied the correct legal standards."  *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938).  "Substantial evidence is more than a

scintilla, but less than a preponderance . . . ." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III. <u>ANALYSIS</u>

A claimant is "disabled" under Title II of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled and, therefore, entitled to benefits. 20 C.F.R. § 404.1520.

Step one assesses whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Step two assesses whether the claimant has a "severe impairment," which is defined as an impairment or combination of impairments that "significantly limits [his or her] physical or mental ability to do basic

work activities." 20 C.F.R. § 404.1520(c).  Step three assesses whether the claimant's

impairment(s) "meets or equals" one of the "listed impairments" in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  20 C.F.R. § 404.1520(d).  Step four assesses whether the

claimant's residual functional capacity ("RFC"), which is a measure of what activities the

claimant is able to accomplish despite his or her impairment(s), and whether claimant

can perform any of his or her "past relevant work."  20 C.F.R. § 404.1520(e).  Finally,

step five assesses whether the claimant can perform any other work taking into account

the measured RFC.  20 C.F.R. § 404.1520(g).

    In the present matter, the ALJ found at step one that Plaintiff "has not engaged in

substantial gainful activity since August 31, 2011, the alleged onset date."  (AR at 26.)

At step two, the ALJ found that Plaintiff has the following severe impairments: "minor

degenerative disc disease of the lumbar spine; minor spurring of the right shoulder;

post-traumatic stress disorder (PTSD); bipolar disorder; [and] alcohol and cannabis

abuse."  (AR at 26.)  At step three, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the severity of

one of the listed impairments.  (AR at 27-28.)  At step four, the ALJ found that Plaintiff

has the residual functional capacity to perform medium work, specifically:

> [Plaintiff] can understand, remember, and carry out
> moderately complex instructions that can be learned and
> mastered within a three-month period.  Work duties should
> not require interaction with the general public.  [Plaintiff] can
> interact appropriately with co-workers as long as such
> interaction is not frequent or prolonged.  In this environment,
> [Plaintiff] can tolerate supervision, plan and set goals,
> tolerate work changes, and recognize and avoid work
> hazards.

(AR at 28.)  The ALJ concluded at step four that Plaintiff is "capable of performing past relevant work" in "semiconductor lithography" (working on a production line that manufactures semiconductors).  (AR at 32.)  Thus, the ALJ concluded that Plaintiff is not disabled.  (AR at 32.)

## A. Whether the ALJ failed at step three of the sequential evaluation process to evaluate properly Plaintiff's mental impairments and whether these impairments meet or medically equal a listing of impairment.

Plaintiff argues that the ALJ committed reversible error at step three by improperly evaluating Plaintiff's mental impairments and whether these impairments meet or medically equal one of the listed impairments.  As stated above, at step three, "the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity."  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quotation marks and citation omitted).  If the ALJ finds that a claimant's impairment(s) does not meet or medically equal a listed impairment, then the ALJ is "required to discuss the evidence and explain why he [or she] found that [the applicant] was not disabled at step three."  *Id*.

In the present matter, the ALJ considered at step three whether Plaintiff's impairments meet or medically equal the criteria of listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders).  (AR at 27.)  On appeal, Plaintiff does not contend that the ALJ should have considered any of the other impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Listing 12.04 addresses "affective disorders," which are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Part 404, Subpart P, Appendix 1.  The required level of severity of an affective disorder is met when the requirements in both "paragraph A" and "paragraph B" are met, or when the requirements of "paragraph C" are met.  *Id*.  Paragraph A requires "[m]edically documented persistence, either continuous or intermittent," of either depressive syndrome, manic syndrome, or bipolar syndrome.  *Id*.  Paragraph B requires that the affective disorder result in "at least two of the following: (1) Marked restrictions of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration[.]"  *Id*. Paragraph C requires a

> [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1.  Repeated episodes of decompensation, each of extended duration; or
>
> 2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id*.

Listing 12.06 addresses "anxiety related disorders," which have anxiety as "either the predominant disturbance or it is experienced if the individual attempts to master symptoms." *Id*. The required level of severity of an anxiety related disorder is met when the requirements in both paragraph A and paragraph B are met, or when the requirements in both paragraph A and paragraph C are met. *Id*. Paragraph A requires:

> Medically documented findings of at least one of the following:
>
> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>     a. Motor tension; or
>     b. Autonomic hyperactivity; or
>     c. Apprehensive expectation; or
>     d. Vigilance and scanning; or
>
> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
>
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
>
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
>
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

*Id*. Paragraph B's requirements are identical to those in listing 12.04. *Id*. Paragraph C requires that the anxiety disorder result in the "complete inability to function independently outside the area of one's home." *Id*.

Listing 12.09 addresses "substance addiction disorders," which include "[b]ehavioral changes or physical changes associated with the regular use of

substances that affect the central nervous system."  *Id*.  The required level of severity of

a substance addiction disorder is met when the requirements of any one of the following

is satisfied: organic mental disorders (listing 12.02), depressive syndrome (listing

12.04), anxiety disorders (listing 12.06), personality disorders (listing 12.08), peripheral

neuropathies (listing 11.14), liver damage (listing 5.05), gastritis (listing 5.00),

pancreatitis (listing 5.08), or seizures (listing 11.02 or 11.03).  *Id*.

The ALJ found that Plaintiff does not satisfy the paragraph B criteria—one of the

possible requirements of both listing 12.04 and 12.06—because Plaintiff's "mental

impairments do not cause at least two 'marked' limitations or one 'marked' limitation and

'repeated' episodes of decompensation, each of extended duration."  (AR at 27.)  More

specifically, the ALJ found that Plaintiff has only "moderate restrictions" in "activities of

daily living, social functioning, and maintaining concentration, persistence and pace."

(AR at 27.)  In support of this finding, the ALJ cited the following evidence:

> [Plaintiff] prepares meals daily, takes care of laundry,
> vacuuming, picks up after his dog, wipes down counters and
> takes out the trash (Ex. 6E).  He drives, and he goes
> shopping a couple of times per month (*id*).  He also shops by
> computer (*id*).  He spends time with others weekly, including
> talking to his out-of-state family on the telephone and
> spending time with a friend (*id*).  [Plaintiff] is able to pay bills,
> count change, handle a savings account, and use a
> checkbook/money orders (*id*).  [Plaintiff] recently finished his
> bachelor's degree in project management, turning in his final
> paper the day before the hearing (Claimant Testimony).

(AR at 27.)  In addition, the ALJ found that Plaintiff has not experienced repeated

episodes of decompensation, each lasting for an extended duration.  (AR at 27.)

The ALJ also found that "the evidence fails to establish the presence of the 'paragraph C' criteria" for either listing 12.04 or listing 12.06.  (AR at 27.)  With regard to listing 12.04, the ALJ found that the paragraph C criteria are not met because "there is no evidence of repeated episodes of decompensation of extended duration, a residual disease process resulting in decompensation, or a history of one or more years of inability to function outside a highly supportive living arrangement."  (AR at 27.)  With regard to listing 12.06, the ALJ found that the paragraph C criteria are not met because Plaintiff "has not had an impairment resulting in complete inability to function independently outside the area of his home."  (AR at 27-28.)

The ALJ did not address listing 12.09—substance addiction disorders—because she determined that Plaintiff did not meet the requirements for either listing 12.04 or listing 12.06.

### 1.  Dr. Andres Rivera's Mental Residual Functional Capacity Statement.

In his first challenge to the ALJ's findings at step three, Plaintiff argues that the ALJ did not perform a "proper review of [Plaintiff's] mental impairments" because the ALJ was not able to review the Mental Residual Functional Capacity Statement ("RFC Statement") of Dr. Andres Rivera, dated July 9, 2014.  (Doc. 11 at 11.)  The ALJ was not able to review Dr. Rivera's RFC Statement because it was not created until almost two months after the ALJ issued her written decision.  However, Dr. Rivera's RFC statement was submitted to the Appeals Council prior to its review.  According to Plaintiff, Dr. Rivera's RFC Statement "specifically addresses the severity of [Plaintiff's]

depression and anxiety as required by the A, B, and C criteria of Listings 12.04 and 12.06." (Doc. # 11 at 14.)

Plaintiff's argument is unpersuasive, however, because Plaintiff fails to even attempt to relate the issue of Dr. Rivera's RFC Statement to the sole questions on review of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. The entirety of Plaintiff's argument is that Dr. Rivera's RFC Statement "shows the severity of [Plaintiff's] mental impairments." (Doc. # 11 at 11.) This argument is misplaced, however, because the ALJ found at step two that Plaintiff suffers from severe mental impairments—thus, the issue of the severity of Plaintiff's mental impairments is not at issue. More importantly, however, the mere fact that Dr. Rivera's RFC Statement was not available to the ALJ at the time of her review does not lead to the conclusion that the ALJ's decision is not supported by substantial evidence or that she applied the wrong legal standard.

## 2. Evidence to Support a Finding that Plaintiff's Impairments Meet or Equal a Listing.

In his second challenge to the ALJ's findings at step three, Plaintiff argues that "[m]edical records in the administrative record that were and were not reviewed by the ALJ . . . also support [Plaintiff's] argument that he meets or equals Listing 12.04 Affective Disorders and/or Listing 12.06 Anxiety Related Disorders." (Doc. # 11 at 14.) The next 14 pages of Plaintiff's brief consist entirely of block quotations from various medical records, with no analysis whatsoever as to how, or even whether, these medical records contradict or undercut the evidence that the ALJ relied on at step three. While it may be the case that Plaintiff is able to identify some evidence in the record that

could support a finding that Plaintiff's impairments meet or medically equal a listing, the Court is limited in its review solely to the questions of whether the ALJ's finding that Plaintiff's impairments do not meet or medically equal a listing is supported by substantial evidence and whether the ALJ applied the correct legal standards. *See, e.g.*, *Pacheco*, 931 F.2d at 696 (the Court "reviews the Secretary's decision to determine whether the findings are supported by substantial evidence"). As stated above, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's," *Glass*, 43 F.3d at 1395, which is precisely what Plaintiff asks the Court to do here. Importantly, Plaintiff does not contend that the ALJ's findings at step three are not supported by substantial evidence, and it would be improper for the Court to assume that Plaintiff intends to make such an argument.

### 3. The Opinion of a Medical Expert.

In his third challenge to the ALJ's findings at step three, Plaintiff argues that "the ALJ should have employed a medical expert (ME) to opine as to whether the combination of [Plaintiff's] physical and/or mental severe and nonsevere impairments medically equals one of the impaired listings." (Doc. # 11 at 28.) In support of this argument, Plaintiff cites the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") section I-2-5-34(B), which states that an ALJ "must obtain an ME's opinion, either in testimony at a hearing or in response to written interrogatories . . . [w]hen the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing."

According to the Social Security Administration's Medical Expert Handbook, "[a]n ME is a physician, psychologist, speech-language pathologist, and certain other types of medical professionals who provide impartial expert opinion evidence that an ALJ considers when making a decision about disability." Medical Expert Handbook at 3 (June 2011), *available at* http://www.socialsecurity.gov/appeals/public_experts/ Medical_Experts_(ME)_Handbook-508.pdf. "The primary function of a[n] ME is to explain medical terms and the findings in medical reports in more complex cases in terms that the ALJ, who is not a medical professional, may understand." *Turner v. Astrue*, 10-cv-845, 2011 WL 4436577, at *9 (N.D. Ohio Sept. 23, 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 408 (1972)). Medical experts "usually testify in person at a hearing," although sometimes they may "testify by video teleconferencing (VTC) technology or telephone" or they may "provide opinions in writing by answering written questions called interrogatories." Medical Expert Handbook at 3.

An ALJ *may* need to obtain the opinion of an ME when "the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s)." HALLEX section I-2-5-34(A) (emphasis added); *see also* 20 C.F.R. § 404.1527(e)(2)(iii) ("Administrative law judges *may* also ask for and consider opinions from medical experts . . . on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart.") (emphasis added). "An administrative law judge's determination of whether a medical expert is necessary is inherently a discretionary one." *Turner*, 2011 WL 4436577, at *10 (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 189 (6th Cir. 2009) (unpublished)).

As correctly pointed out by Plaintiff, in certain instances, an ALJ "*must* obtain an

ME's opinion, either in testimony at a hearing or in response to written interrogatories,"

including "[w]hen the ALJ is considering a finding that the claimant's impairment(s)

medically equals a medical listing."  HALLEX section I-2-5-34(B) (emphasis added).

However, that circumstance is not present here.  In the present matter, the ALJ merely

determined whether Plaintiff's impairments met or medically equaled a listed

impairment, which, pursuant to HALLEX I-2-5-34(A), the ALJ is free to do with or without

the opinion of a medical expert.  If the ALJ had gone one step further and actually

considered a finding that Plaintiff's impairments met or medically equaled a medical

listing, then the ALJ would have been required by HALLEX I-2-5-34(B) to obtain the

opinion of a medical expert.  Plaintiff's interpretation of HALLEX I-2-5-34 ignores the

distinction between subsections A and B and, if followed, would require the ALJ to

obtain the opinion of a medical expert during all hearings at step three of the sequential

analysis—a proposition that is clearly not contemplated by the governing regulations.

*See* 20 C.F.R. § 404.1527(e)(2)(iii); *see also Rudy v. Colvin*, 13-cv-1254, 2014 WL

5782930, at *14 (S.D. Ohio Nov. 6, 2014), *report and recommendation adopted*, 2015

WL 1000672 (S.D. Ohio Mar. 5, 2015) ("If plaintiff is correct, rather than having

discretion as to whether [to] obtain testimony from a medical expert, an administrative

law judge would be required to have a medical expert in each and every case.  The

plain language of the provision relied upon by plaintiff [HALLEX I-2-5-34(B)] more likely

requires the opinion of a medical expert in any case in which the administrative law

judge makes a finding that a claimant's impairment equals a listing.").  In the present

matter, the ALJ did not consider a finding that Plaintiff's impairments met or medically

equaled a medical listing.  Therefore, contrary to Plaintiff's arguments, the ALJ was not

required to obtain the opinion of a medical expert.

Plaintiff also asserts that "[t]he only evaluation of [Plaintiff's] physical impairments

was performed by a State agency single decision maker (SDM) (*see* Tr. 68-80), who is

not a medical source."  (Doc. # 11 at 28.)  The Court presumes that Plaintiff is referring

to the fact that, according to the Disability Determination and Transmittal (Form SSA-

831-C3), Breanne Bassett, SDM performed Plaintiff's Physical Residual Functional

Capacity (RFC) Assessment.  (AR at 75-76.)

The Court notes, however, that the ALJ's finding at step three that Plaintiff's

impairments do not meet or medically equal a listing is supported by psychologist

James J. Wanstrath, Ph.D.,'s assessment of Plaintiff's Medically Determinable

Impairments and Severity (MDI), which is also included in the Disability Determination

and Transmittal (Form SSA-831-C3).  (AR at 73-74.)  In Dr. Wanstrath's opinion,

Plaintiff suffers from anxiety disorder, affective disorder, and substance abuse disorder,

however, Plaintiff's impairments do not meet or medically equal either Listing 12.04,

12.06, or 12.09.  (AR at 73-74.)  The ALJ properly considered Dr. Wanstrath's opinion.

*See Social Security Ruling 96-6p*, 1996 WL 374180 (July 2, 1996) ("[L]ongstanding

policy requires that the judgment of a physician (or psychologist) designated by the

Commissioner on the issue of equivalence on the evidence before the administrative

law judge or the Appeals Council must be received into the record as expert opinion

evidence and given appropriate weight.")  Thus, contrary to Plaintiff's argument, opinion

evidence on medical equivalence was provided by a psychologist (not simply an SDM).

### B. Whether the ALJ failed to evaluate the medical evidence and medical source opinions as required by 20 C.F.R. § 404.1527.

Plaintiff also argues that the ALJ's decision is deficient because she failed to

evaluate the medical evidence and medical source opinions as required by 20 C.F.R. §

404.1527.  (Doc. # 11 at 31.)  As an initial matter, the Court notes that section II of

Plaintiff's brief consists primarily of conclusory allegations with very little in the way of

developed legal argument.  Plaintiff cannot simply assert that the ALJ's action or

inaction with regard to a particular issue constituted error.  Instead, Plaintiff must explain

how the ALJ applied the incorrect legal standard or why the ALJ's factual findings were

not supported by sufficient evidence.  The Court will address each of Plaintiff's various

assertions in turn.

### 1.  The ALJ's Duty to Develop the Record.

Plaintiff asserts that "[t]he ALJ failed in her duty to fully and fairly develop the

record as to material issues."  (Doc. # 11 at 31.)  Plaintiff is correct that, "because a

social security disability hearing is a nonadversarial proceeding, the ALJ is responsible

in every case to ensure that an adequate record is developed during the disability

hearing consistent with the issues raised."  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th

Cir. 2006) (internal quotation marks and citations omitted).  In addition, because Plaintiff

was unrepresented by counsel at his hearing, the ALJ had a heightened duty to develop

the record in this case.  *Id*.

However, Plaintiff provides absolutely no argument as to how exactly the ALJ failed in her duty to develop the record in this particular case or which specific parts of the record should have been more developed.  It would be improper for the Court to attempt to guess at which areas of the record Plaintiff believes require additional development.  Because Plaintiff fails to provide the required legal argument, the Court will not consider this issue.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of . . . review . . . is limited to the issues the claimant . . . adequately presents on appeal.").

### 2.    The ALJ's Evaluation of Medical Source Opinions.

Plaintiff makes a series of assertions regarding the ALJ's evaluation of medical source opinions.  For example, Plaintiff asserts that "the ALJ's approach impermissibly put her in the position of judging a medical professional on how he or she should assess medical data, i.e., the patient's self-reported symptoms."  (Doc. # 11 at 35.)  Although it is unclear what Plaintiff means by "the ALJ's approach," the Court assumes that, because this assertion follows factual statements regarding the weight that the ALJ gave to particular medical opinions, Plaintiff objects to the ALJ's findings regarding the weight to be given to particular medical opinions.

For example, Plaintiff correctly observes that the ALJ gave little weight to the opinion of Dr. Sandra Buseman, who performed a compensation and pension examination ("CPE") of Plaintiff in April 2012, as well as to the other CPEs in the record.

However, Plaintiff does not argue that the ALJ committed error in giving little weight to Dr. Buseman's opinion.  Nevertheless, the ALJ did not err when deciding to give little weight to Dr. Buseman's opinion because the ALJ believed that there was a lack of objective evidence to substantiate Plaintiff's physical impairments, and Dr. Buseman's assessment of Plaintiff's functional limitations were largely based on Plaintiff's self-reports.  (AR at 29.)  The regulations specifically provide that, when considering how much weight to give a medical opinion, the ALJ should consider the "supportability" of the opinion.  20 C.F.R. § 404.1527(c)(3).  Specifically, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." *Id*.  Conversely, an opinion that is not supported by medical signs and laboratory findings will be given less weight.  Plaintiff does not assert, let alone attempt to demonstrate why, it was improper for the ALJ to give less weight to Dr. Buseman's opinion and the other CPEs in the record based on the fact that they are not supported by medical signs and laboratory findings.  In addition, Plaintiff fails to explain how the ALJ's decisions regarding the weight to give certain medical opinions somehow equates to the ALJ "put[ting] her[self] in the position of judging a medical professional on how he or she should assess medical data."

Plaintiff also asserts that the "ALJ's analysis failed to consider the extent to which [Plaintiff's] severe mental impairment affected his exertional abilities, or how stress would impact his ability to work."  (Doc. # 11 at 36.)  While Plaintiff is correct that "an ALJ is required to consider all of the claimant's medically determinable impairments,

singly and in combination," *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006), that

correct statement of the law does not support Plaintiff's assertion.  Plaintiff did not allege

before the ALJ, nor does he allege now, that his mental impairments have any effect on

his "exertional abilities."  Plaintiff does not point to, and the Court is not aware of, any

evidence in the record showing that Plaintiff's mental impairments had any effect on his

"exertional abilities."  In addition, Plaintiff fails to explain the significance of his assertion

that the ALJ failed to consider "how stress would impact his ability to work."  Plaintiff

fails to demonstrate why the ALJ was required to consider "how stress would impact his

ability to work," thus, it cannot be reversible error if the ALJ did not do so.

Plaintiff also asserts that, "[c]ontrary to the ALJ's finding, Dr. Wanstrath's opinion

was not consistent with the weight of the evidence as a whole (Tr. 31)." (Doc. # 11 at

36.)  Again, however, like nearly all of Plaintiff's arguments in this section of Plaintiff's

brief, Plaintiff fails to provide any additional analysis.  For example, Plaintiff does not

identify which aspects of Dr. Wanstrath's opinion are allegedly inconsistent with the

record as a whole or which portions of the record contradict Dr. Wanstrath's opinion.  It

is improper for the Court to address issues that Plaintiff has inadequately briefed.  *See,*

*e.g.*, *Keyes-Zachary*, 695 F.3d at 1161 ("We will consider and discuss only those

contentions that have been adequately briefed for review.")  In addition, Plaintiff fails to

demonstrate how this assertion is at all related to whether the ALJ applied the correct

legal standards or whether the ALJ's findings are supported by substantial evidence.

Plaintiff also argues that "[t]he ALJ's rejection of portions of Dr. Neufeld's report

reflects an improper picking and choosing among medical reports, using only those

portions of evidence that would support her findings of nondisability." (Doc. # 11 at 37.)

In support of this assertion, Plaintiff cites *Carpenter v. Astrue*, 537 F.3d 1264, 1265

(10th Cir. 2008), which states that "it is improper for the ALJ to pick and choose among

medical reports, using portions of evidence favorable to his position while ignoring other

evidence." While, this is a correct statement of the law, Plaintiff fails to demonstrate

how it supports his assertion that the ALJ improperly rejected one aspect of Dr.

Neufeld's report. The ALJ stated that she "gives some weight to the opinion of

consultative examiner Victor Neufeld, Ph.D. (Ex. 5F)" and that "Dr. Neufeld's

assessment is generally persuasive, except that his finding of moderate to marked

impairment with respect to social interaction is not supported by his examination or the

claimant's presentation (*id*)." (AR at 31.) Contrary to Plaintiff's assertion, the ALJ's

finding that Dr. Neufeld's assessment was not persuasive with regard to his finding of

moderate to marked impairment with respect to social interaction does not represent "an

improper picking and choosing among medical reports." As stated above, the ALJ is

free to determine how much weight to give a medical opinion, *see* 20 C.F.R. §

404.1527(c), and, in this instance, the ALJ simply concluded that a certain portion of Dr.

Neufeld's assessment was less persuasive because it was not supported by the

evidence—namely "[Dr. Neufeld's] examination or [Plaintiff's] presentation." (AR at 31.)

Plaintiff also states that "[t]he ALJ's conclusion that [Plaintiff's] low [Global

Assessment of Functioning ("GAF")] scores were primarily due to substance abuse

overlooked [Plaintiff's] significant emotional impairments and failed to consider

[Plaintiff's] bipolar disorder and PTSD as contributing factors leading to his abuse of

drugs and alcohol." (Doc. # 11 at 38.) Plaintiff supports this assertion by citing *Salazar*,

468 F.3d at 621, and *McGoffin v. Barnhart*, 288 F.3d 1248, 1252-53 (10th Cir. 2002).

As with other areas of Plaintiff's brief, the law cited does not support Plaintiff's assertion.

In both *McGoffin* and *Salazar*, the issue was whether the ALJ properly considered drug

and alcohol abuse as a contributing factor when determining whether the claimant was

disabled.  The issue raised by Plaintiff here, however, is whether the ALJ properly

attributed Plaintiff's low GAF scores to his drug and alcohol abuse.  In addition, it

appears that the law at issue in *McGoffin* and *Salazar*—the Contract with America

Advancement Act of 1996—does not apply in the present matter.  That law added an

extra requirement to the five-step sequential evaluation for claimants with drug and

alcohol addiction—namely that a claimant could not be considered disabled if

alcoholism or drug addiction would be a contributing factor to the Commissioner's

decision.  Thus, according to the implementing regulations, if the Commissioner finds

that a claimant is disabled, the Commissioner "must determine whether [the claimant's]

drug addiction or alcoholism is a contributing factor material to the determination of

disability."  20 C.F.R. § 416.935(a).  In a teletype issued shortly after the law was

amended, the Commissioner clarified that if the effects of a claimant's mental

impairments cannot be separated from the effects of his/her substance abuse, then the

substance abuse is not considered a contributing factor.  *See Salazar*, 468 F.3d at 623.

Thus, the case law cited by Plaintiff has no bearing on an ALJ's evaluation of GAF

scores.  In addition, the law at issue in *McGoffin* and *Salazar* does not apply to the

present matter because the ALJ did not find that Plaintiff was disabled and, therefore,

did not need to consider whether Plaintiff's drug and alcohol abuse was a contributing factor to his disability.

Plaintiff also alleges that the ALJ improperly relied on Plaintiff's noncompliance with his treatment and medication to deny his application for benefits because the ALJ did not "consider whether [Plaintiff] had a justifiable reason for the alleged noncompliance and whether the treatment would restore the ability to work."  (Doc. # 11 at 39.)  In support of this argument, Plaintiff cites 20 C.F.R. § 404.1530, Social Security Ruling 82-59, and *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).  Plaintiff is correct that, if an ALJ denies an application for benefits because the applicant did not follow prescribed treatment, the ALJ must also consider whether that failure was justified. However, reliance on that standard is inapposite to the present matter because the ALJ did not deny Plaintiff's application based on the fact he did not take his medication. *See, e.g.*, *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("Plaintiff's reliance on our opinion in *Frey* is misplaced, because *Frey* concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment.  [*Frey*, 816 F.2d] at 517; *see also* 20 C.F.R. § 404.1530, SSR 82-59, 1982 WL 31384 (S.S.A.).")  In the present matter, the ALJ's noting of Plaintiff's failure, at times, to comply with his prescribed treatment, was in the context of assessing Plaintiff's GAF scores.  Thus, contrary to Plaintiff's assertion, the ALJ did not base her finding that Plaintiff is not disabled on Plaintiff's failure to take his medication.

Plaintiff also appears to take issue with the ALJ's consideration of Plaintiff's VA disability rating, noting that "[t]he ALJ also rejected [Plaintiff's] VA disability rating,

finding that [Plaintiff] had been discharged from military service 'for a non-disability

reason,' i.e., he was the sole custodial parent of his minor child and did not have an

alternative plan in place to care for the child (Tr. 31)."  (Doc. # 11 at 40.)  However,

Plaintiff fails to even allege that the ALJ's decision constituted error, let alone

demonstrate how or why it would be considered error.  Thus, it would be improper for

the Court to address this issue.  *See, e.g.*, *Keyes-Zachary*, 695 F.3d at 1161 ("We will

consider and discuss only those contentions that have been adequately briefed for

review.")  Nevertheless, the Court notes that the Social Security Administration's

regulations provide: "A decision by any . . . governmental agency about whether you are

disabled . . . is based on its rules and is not [the Commissioner's] decision about

whether you are disabled . . . .  [The Commissioner] must make a disability . . .

determination based on social security law.  Therefore, a determination made by

another agency that you are disabled . . . is not binding on [the Commissioner]."  20

C.F.R. § 404.1504.

### 3.   Whether the Appeals Council should have remanded the case to the ALJ for review of new and material evidence.

Plaintiff argues that the Appeals Council "should have remanded the case to the

Administrative Law Judge for review of the new and material evidence."  (Doc. # 11 at

41.)  In support of his argument, Plaintiff cites "sentence six" of 42 U.S.C. § 405(g),

which states that the district court reviewing the Commissioner's decision "may at any

time order additional evidence to be taken before the Commissioner of Social Security,

but only upon a showing that there is new evidence which is material and that there is

good cause for the failure to incorporate such evidence into the record in a prior proceeding."

In response, the Commissioner argues that "the Appeals Council's denial of Plaintiff's request for review—without issuing a decision—is an action that is not subject to judicial review."  (Doc. # 12 at 13 n.5.)  In support, the Commissioner cites 42 U.S.C. § 405(g) and 20 C.F.R. § 404.981.  As noted above, 42 U.S.C. § 405(g) permits, and sets forth the terms of, a district court's review of the Commissioner's decision.  20 C.F.R. § 404.981, more specifically, states that the Appeals Council may either deny or grant an applicant's request for review and that if it denies the request, the ALJ's decision is the binding decision of the Commissioner.

The Court finds Plaintiff's argument unpersuasive.  Plaintiff argues that the Appeals Council should have remanded Plaintiff's case to the ALJ because Plaintiff submitted additional evidence to the Appeals Council that was not available to the ALJ. In support of this argument, Plaintiff cites sentence six of 42 U.S.C. § 405(g).  However, that provision does not apply in this matter because the "new" evidence to which Plaintiff refers was, in fact, incorporated into the record in his prior administrative proceeding.  *See* 42 U.S.C. § 405(g) (stating that a district court may order additional evidence to be taken *only if* the new evidence is material and "there is good cause for the failure to incorporate such evidence *into the record in a prior proceeding*") (emphasis added); *see also Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (stating that a remand pursuant to sentence six of 42 U.S.C. § 405(g) is "appropriate when the district court learns of evidence not in existence or available to the claimant *at the time*

*of the administrative proceeding* that might have changed the outcome of the proceeding") (emphasis added); *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) ("Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause *not presented before the agency*.") (emphasis added). In this case, the Appeals Council explicitly stated that it reviewed and incorporated into the record the additional evidence that Plaintiff submitted to it but that had not been available to the ALJ.  (AR at 1-2, 4-5.)

Although not cited by either party, the Court notes that 20 C.F.R. § 404.970 requires the Appeals Council to consider certain "new and material evidence."  The Appeals Council's failure to consider such evidence may be grounds for remand.  *See, e.g.*, *Lawson v. Chater*, No. 95-5155, 1996 WL 195124, at *2 (10th Cir. Apr. 23, 1996) (unpublished) ("Accordingly, we hold that the new evidence submitted on plaintiff's administrative appeal should have been considered by the Appeals Council.  This omission constitutes substantial legal error necessitating a remand for further proceedings consistent with the principles discussed herein.")  However, Plaintiff in this matter does not allege, nor does it appear, that the Appeals Council failed to consider any "new and material evidence" that it was required to consider under 20 C.F.R. § 404.970.

### 4.  Whether the ALJ's evaluation of the credibility of Plaintiff's subjective complaints was deficient.

Lastly, Plaintiff argues that "the ALJ erred in assessing the credibility of [Plaintiff's] subjective complaints of pain and other symptoms" because the ALJ "did not

carefully consider the relevant factors" set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  (Doc. # 11 at 43.)

In *Luna*, the Tenth Circuit reiterated "that a pain-producing impairment, whether psychological or physiological in origin, must be proven by objective medical evidence before an agency decision-maker can find a claimant disabled by pain."  *Luna*, 834 F.2d at 163.  If a pain-producing impairment is demonstrated by objective medical evidence, then the ALJ must consider whether the impairment is one that could reasonably be expected to produce the alleged pain.  *Id*.  If the nexus between the impairment and the alleged pain is insufficient, the analysis stops and the claimant is not entitled to benefits based on disabling pain.  *Id*.  If, however, there is a sufficient nexus between the impairment and the alleged pain, then the ALJ must consider all the evidence presented to determine whether the claimant's pain is, in fact, disabling.  *Id*.  This evidence includes "the medical data previously presented, any other objective indications of the degree of the pain, and subjective accounts of the severity of the claimant's pain."  *Id*.

The Tenth Circuit in *Luna* also noted that it had previously recognized "numerous factors in addition to medical test results that agency decision-makers should consider when determining the credibility of subjective claims of pain greater than that usually associated with a particular impairment."  *Id*. at 165.  Those factors include, but are not limited to: a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed; regular use of crutches or a cane; regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the

claimant's daily activities; and the dosage, effectiveness, and side effects of medication. *Id*. at 165-66.

In support of his argument that the ALJ erred when evaluating his credibility with regard to his subjective complaints of pain, Plaintiffs asserts: (1) that Plaintiff "consistently sought treatment for his medical problems and had regular contact with his doctors"; (2) that "the ALJ failed to consider the combined effect of [Plaintiff's] physical and psychological impairments"; (3) that "the ALJ failed to consider the role [of Plaintiff's] mental impairments with regard to compliance with recommended treatment; and (4) that Plaintiff's motorcycle accident "illustrated [Plaintiff's] well-documented difficulties in exercising rational judgment because of his mental impairments."  (Doc. # 11 at 43-44.)  In response, the Commissioner argues that the ALJ reasonably evaluated the credibility of Plaintiff's subjective statements and considered a number of proper regulatory factors.  (Doc. # 12 at 16-17.)

As stated previously, the Court notes at the outset that its review is limited to "whether the [ALJ's] findings are supported by substantial evidence and whether the [ALJ] applied the correct legal standards."  *Pacheco*, 931 F.2d at 696.  Plaintiff does not allege that the ALJ applied an incorrect legal standard.  Instead, Plaintiff, in effect, contests the sufficiency of the evidence supporting the ALJ's finding as to Plaintiff's credibility regarding his assertions of pain.

At step four, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely credible."  (AR at 29.) The ALJ found that although the medical evidence establishes Plaintiff's minor lumbar

degenerative disc disease, right knee degenerative joint disease, and minor spurring in the right shoulder, Plaintiff's "[p]hysical examinations have generally been relatively benign, typically reflecting findings such as normal strength [and] normal gait." (AR at 29.) In support of this finding, the ALJ cites the office treatment records from VA Southern Colorado Healthcare System, dated June 11, 2009, to April 17, 2012. (AR at 29.) Plaintiff does not challenge this finding.

The ALJ also cites the fact that Plaintiff was able to ride his motorcycle and "control it well enough to prevent severe physical injury in an accident in November 2012, despite a blood alcohol level of .22, with opiates and THC." (AR at 29.) Plaintiff does not challenge the ALJ's use of this fact to support her finding that Plaintiff was not entirely credible, but rather argues that this event "illustrated [Plaintiff's] well-documented difficulties in exercising rational judgment because of his mental impairments." (Doc. # 11 at 44.) The Court agrees that Plaintiff's motorcycle accident demonstrated a lack of judgment, but the fact that he was able to ride a motorcycle in the first place supports the ALJ's finding that he was not entirely credible with regard to his reported symptoms and pain.

The ALJ also found that "[m]anagement of [Plaintiff's] symptoms has been conservative." (AR at 29.) In support of this, the ALJ noted that in a Personal Pain Questionnaire dated January 21, 2013, Plaintiff "did not report any medication for pain other than marijuana (Ex. 5E)." (AR at 29.) While this is accurate, and not challenged by Plaintiff, the Court does note that Plaintiff also wrote on the Personal Pain Questionnaire that he had previously been addicted to pain killers and that he "prefer[s]

to stay away from them." (AR at 150.)  The ALJ also noted that the "[r]ecords reflect some sporadic use of ibuprofen (Ex. 1F)" and that "[t]he evidence does not reflect any recommendation for surgery." (AR at 29.)  Plaintiff does not challenge these findings.

While Plaintiff is correct that the record indicates that he "consistently sought treatment for his medical problems and had regular contact with his doctors," (Doc. # 11 at 43-44), the Court finds that the ALJ's finding regarding Plaintiff's credibility is nevertheless supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby affirms the May 22, 2014 written decision of the administrative law judge finding that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act.

DATED: January 11, 2016                          BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge